UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:09-CV-44-H

ROBERT E. SALYER                                                                                    PLAINTIFF

V.

THE SOUTHERN POVERTY                                                                      DEFENDANT
LAW CENTER, INC.

### MEMORANDUM OPINION

Plaintiff, Robert E. Salyer, brought this action in Jefferson County (Kentucky) Circuit Court alleging that Defendant, The Southern Poverty Law Center, Inc., published defamatory statements about him in its 2006 "Intelligence Report," which was published in a print magazine and online. Plaintiff filed suit on December 18, 2008. Defendant removed the case to this Court on diversity grounds.

The pending motions raise novel and interesting issues concerning allegedly defamatory statements on the internet and what might constitute republication of them. Specifically, the parties dispute the narrow issue of whether the one year statute of limitations applicable to defamation actions in Kentucky bars Plaintiff's claim. Because the article was originally published more than one year before commencement of this action, the critical question for the Court is whether the article was "republished" within that one year window. Additionally, Plaintiff seeks leave to amend the Complaint to assert a false light invasion of privacy claim.

**I.**

The relevant facts of this case are undisputed. Plaintiff is an attorney practicing primarily in Kentucky. On July 7, 2006, Defendant posted its "Intelligence Report," a comprehensive

examination of extremist groups in the military, on its website. The report contained an article entitled "A Few Bad Men," which alleged that Plaintiff, among others, was a member of an extremist group and was dishonorably discharged from the military and disbarred from practicing before military courts as a result. The report, including the article, was then published in a print version on August 14, 2006 and mailed to various subscribers. Plaintiff alleges that the statements in the article relating to him were defamatory.

While the article remained accessible on Defendant's website indefinitely, it was not altered until July 21, 2008, when, at Plaintiff's request, Defendant removed all mention of Plaintiff's name. Several articles published on Defendant's website between the original publication of "A Few Bad Men" and the removal of Plaintiff's name referenced the article and included hyperlinks[1] to its original version. Those referencing articles were published on July 21, 2006, July 25, 2006, September 1, 2006, November 23, 2006 and July 18, 2008. Additionally, Defendant's Winter 2008 quarterly print edition contained an article that referred to "A Few Bad Men."[2] Finally, at some time in 2008, Defendant mailed an unedited copy of the August 14, 2006 print publication to a researcher at his request. Plaintiff alleges that these actions constituted republication of the article for purposes of the statute of limitations.

## II.

In an April 23, 2009 Memorandum Opinion (DN # 19), this Court found that all actions for defamation in Kentucky must be brought within one year of the defamatory material's

---

[1] A hyperlink allows the reader of the new article to simply click on the link and immediately be taken to the referenced article.

[2] At the time of this publication, the online version of the article had been modified to remove Plaintiff's name.

publication date. *See* KRS § 413.140(1)(d); *Caslin v. Gen.Elec. Co.*, 608 S.W.2d 69, 70 (Ky. App. 1980). The Court further predicted that Kentucky would follow the "single publication rule" for all mass publications of allegedly defamatory materials, including those materials published on the internet.[3] That rule provides that "any form of mass communication or aggregate publication . . . is a single communication and can give rise to only one action for libel." (Memorandum Opinion April 23, 2009, DN # 19.) On its face, the single publication rule bars this action. The lawsuit was filed on December 18, 2008 and the allegedly defamatory statements were originally published on July 7, 2006 on the internet and August 14, 2006 in print.

However, a narrow exception to the single publication rule called "republication," could provide a way for Plaintiffs to avoid dismissal. As the Court previously noted,

> Republishing material in a new edition, editing and republishing it, or placing it in a new form resets the statute of limitations. This exception protects Plaintiff by providing a remedy where the defendant edits and retransmits the defamatory material, or distributes the defamatory material for a second time with the goal of reaching a new audience.

(Memorandum Opinion April 23, 2009, DN # 19.) Therefore, if Defendant republished the article within one year of commencement of Plaintiff's action, the claim is not time barred.

Plaintiff argues, in essence, that two Defendant's actions each constitute republication: (1) the posting of articles referencing and hyperlinking to "A Few Bad Men," and (2) the mailing of an additional copy of the "Intelligence Report" to a researcher in 2008. With discovery on the issue now complete and all parties having sufficiently briefed the issue, the Court can now fully

---

[3] Although Kentucky courts have never considered the single publication rule with respect to internet publications, "other jurisdictions are almost unanimous in holding that the single publication rule should be applied to Internet publications." *Churchill v. State of New Jersey*, 876 A.2d 311, 316 (N.J. Super. 2005).

address the issues.

### III.

The difficulty here is applying the traditional republication exception in the context of material published on the internet, a form of communication certainly not envisioned when the republication and single publication rules were created. Very little case law, either from Kentucky or other jurisdictions, directly addresses these issues. Thus, the Court found its analysis on two important principles: (1) conforming with the basic purpose of the single publication rule, and (2) applying analogous examples of traditional republication law.

As the Court held in its April 23, 2009, Memorandum Opinion, "[u]nder the single publication rule, the statement is considered published and the statute of limitations runs as soon as the communication enters the stream of commerce." (DN # 19.) The Court went on to explain that the single publication rule satisfies numerous purposes: to avoid multiplicity of actions; to protect the defendant from excessive liability based on a single publication run; to allow the plaintiff to recover all of his damages at once; and to reduce the chilling effect that the common-law rule might have on the mass communication of ideas. Moreover, the single publication rule is designed to prevent "endless retriggering of the statute of limitations." *Firth v. State of new York*, 775 N.E.2d 463, 466 (N.Y. 2002). As the New York Court of Appeals held, in the absence of the single publication rule "the statute of limitations would never expire so long as a copy of such book remained in stock and is made [available to] the public. Such a rule would thwart the purpose of the Legislature to bar [actions filed after the limitations period had run]." *Id.* at 465.

**IV.**

Plaintiff first argues that posting new articles referencing and hyperlinking to "A Few Bad Men" republished the article for purposes of the statute of limitations. The referencing articles were published July 21, 2006, July 25, 2006, September 1, 2006, November 23, 2006 and July 18, 2008.[4] The first four of these articles are irrelevant to the pending motion as each was published more than one year before Plaintiff commenced this action. Even if those 2006 articles with hyperlinks did republish "A Few Bad Men," this lawsuit would still be time barred. Therefore, only the July 18, 2008 article need be discussed.

Plaintiff does not contend that the new articles, including the references to "A Few Bad Men" themselves, were defamatory. The new articles made no specific mention of Plaintiff. Rather, Plaintiff contends only that by referencing and hyperlinking to "A Few Bad Men," the new articles republished the defamatory statements contained therein. Plaintiff cites no case law finding that referencing or hyperlinking to a previous statement republishes that statement. However, that fact alone does not foreclose plaintiff's argument. The Court's research has found a significant dearth of case law on republication generally, as the term is used in this context, and specifically with regard to republication by reference or hyperlink. In analyzing the issue, the Court will examine both the reference and the hyperlink.

**A.**

The reference itself is not a republication of the original article. This Court has been

---

[4] To the extent Plaintiff argues that articles published after July 21, 2008, when Defendant redacted Plaintiff's name from "A Few Bad Men," republished the article, Plaintiff's argument must fail. Those articles cannot have republished the allegedly defamatory statements. The article on Defendant's website, to which these new articles hyperlinked, no longer contained the defamatory statements. Thus, if anything was republished, it was the non-defamatory statements. Further, the mere existence on other websites of old editions of the article with the defamatory statements does not create republication. That is the basic tenent of the single publication rule.

unable to find any Kentucky or Sixth Circuit law directly on point. In 1946, the New York Court of Appeals did address the question directly in *Klein v. Biben*, 69 N.E.2d 682 (N.Y. 1946). There, the defendant published an article in its May 12, 1944 publication and referenced that article in a subsequent article published on June 23, 1944. Asked the certified question, "Does the publication of June 23, 1944, republish the libel published on May 12, 1944, by specific reference thereto," the court simply stated that "question[] certified [is] answered in the negative." *Id.* at 682. The Court agrees with the answer given by New York's highest Court.

Republication, at its core, includes actions such as "publishing a second edition [of] a book or periodical, editing and republishing defamatory material, or placing it in a new form." *Davis v. Mitan*, 347 B.R. 607, 611 (W.D. Ky. 2006) (citing Restatement (Second) of Torts § 577A). The republication "exception provides the plaintiff with a remedy where the defendant edits and retransmits the defamatory material, or distributes the defamatory material for a second time with the goal of reaching a new audience." *Id.* (citing *Firth*, 775 N.E.2d at 466-67). It appears that the common thread of traditional republication is that it presents the material, in its entirety, before a new audience. A mere reference to a previously published article does not do that. While it may call the *existence* of the article to the attention of a new audience, it does not present the *defamatory contents* of the article to that audience.[5] Therefore, a reference, without more, is not properly a republication.

**B.**

The stronger of Plaintiff's arguments is that the hyperlink republished the original article.

---

[5] Obviously, it would be a different case had the July 18, 2008 article restated the defamatory remarks about Plaintiff. In such a case, the July 18, 2008 article itself could be the basis for Plaintiff's defamation claim. Those, however, are not the facts of the present case.

According to Plaintiff, a hyperlink is nothing more than an attempt by the original publisher of an online statement to present that statement to a new audience. If the goal was not to present the prior statement to a new audience, according to Plaintiff, there would be no purpose in the hyperlink. After all, the original audience has, in theory, already read the article.

Plaintiff's argument has some logical appeal, especially in light of the facts of this case. Defendant published the July 18, 2008 article in a new section of its website entitled the "Hate Blog." This blog was created well after the 2006 Intelligence Report and appeals to a different type of audience. The purpose of the hyperlink was certainly to entice new readers who had not previously read "A Few Bad Men" to click on the link and be directed to the article. The Restatement (Second) of Torts § 577A specifically states that the justification for the republication exception to the single publication rule "is that in these cases the second publication is intended to and does reach a new group." *Id.* at cmt. d. The intent element of republication certainly appears present when a publisher creates a hyperlink like the one involved here.

However, the critical feature of republication is, again, that the original text of the article was changed or the contents of the article presented directly to a new audience. That did not occur here. Rather, the hyperlink is simply a new means for accessing the referenced article. Making access to the referenced article easier does not appear to warrant a different conclusion from the analysis of a basic reference.

The Western District of Kentucky has considered republication on the internet. In *Davis v. Mitan*, 347 B.R. 607 (W.D. Ky. 2006) (*Davis II*), Judge Coffman stated,

> The mere act of editing a website to add unrelated content does not constitute republication of unrelated defamatory material that is posted on the same website.

> Similarly, mere technical changes to a website, such as changing the way an item of information is accessed, is not republication. These rules are consistent with a public policy that encourages the free transmission of information and ideas. In contrast, where substantive material is added to a website, and that material is related to defamatory material that is already posted, a republication has occurred.

*Id.* at 611-12. The Court then applied these principles to the facts of the case and found republication. The defendants maintained a website relating to Kenneth Mitan and his family. In a separate 2003 action, the Western District of Kentucky dismissed libel claims related to the website as barred by the statute of limitations. *Mitan v. Davis*, 243 F. Supp.2d 719 (W.D. Ky. 2003) (*Davis I*). "After the order of dismissal, the [plaintiffs] updated their website, adding "Breaking News!" and "Update!" sections. These sections list additional nefarious activities in which Kenneth and, by reference, his family are alleged to have participated."[6] *Davis II*, 347 B.R. at 610. Based on these new sections, the Bankruptcy Court had found republication of defamatory material about Kenneth and his family. On review, the District Court found that because the "new material on the [plaintiffs'] website *contained substantive information* related to Kenneth and, by reference, to the [entire] family," the website was republished and the plaintiffs could maintain their defamation suit. *Id.* at 612 (emphasis added). The critical element for republication in *Davis II* was the fact that new substantive information was added to the actual webpage defaming the plaintiffs. Thus, the facts of *Davis II* closely resemble the traditional notion of republication where the defendant edits and republishes the defamatory material or places it in a new form.

Our case does not present the same application of republication. Rather, it is undisputed

---

[6] To be clear, "reference," as it is used in *Davis II,* is not the same as the reference made to the previous article in this case. In *Davis II*, the website published new information about Kenneth Mitan on webpages that also referred to Kenneth's family. By adding information to the actual webpage with defamatory statements about Kenneth's family, the Court found that the entire defamatory webpage was republished.

8

that the actual webpage containing the "A Few Bad Men" article was never modified in any manner until Plaintiff's name was removed. While other portions of Defendant's website may have changed, those portions were unrelated to the defamatory statements found in "A Few Bad Men." Thus, the substantive changes that triggered republication in *Davis II* do not indicate republication in this case. In fact, the lack of substantive changes strongly suggests an absence of republication.

The Court has found only two cases directly discussing links to former articles on the internet in the context of republication. In the first, *Sundance Image Technology, Inc. v. Cone Editions Press, Ltd.*, No. 02 CV 2258 JM (AJB), 2007 WL 935703 (S.D. Cal. March 7, 2007), the court dismissed the republication by hyperlink argument without extensive discussion. The court stated,

> Plaintiffs appear to argue that the statements were republished when IJM's website provided links to the statements in March 2005. . . . Plaintiff cites no authority holding that providing links to statements already published on the Web, without more, republishes those statements. Rather, the court finds that such linking is more reasonably akin to the publication of additional copies of the same edition of a book, which is a situation that does not trigger the republication rule.

*Id.* at *7.

The issue was also discussed in *Churchill v. State of New Jersey*, 876 A.2d 311 (N.J. Super. 2005). There, a press release posted on the defendant's website within the one-year limitations period directly referenced a defamatory report posted over one year before the action was initiated and "invited visitors to the site to view the report." *Id.* at 477. The plaintiff argued that this press release republished the initial report, thus retriggering the statute of limitations period. Again, the court disagreed in a summary fashion, finding that changes to the website, including the press release, merely "altered the means by which website visitors could access the

9

report, but they in no way altered the substance or form of the report." *Id.* at 483. Because the substance or form of the report was not altered, the court determined that merely linking to the report did not constitute republication.

Although these cases are certainly not binding on Kentucky courts, this Court predicts that Kentucky would follow their rationale. Traditional republication occurs when the substance of the previously published defamatory statements are altered or the defamatory statements themselves are put forth in a new form. Neither of those methods of republication occurred in this case. The hyperlinks, while adding a new method of access to "A Few Bad Men," did not restate the allegedly defamatory statements and did not alter the substance of that article in any manner.

Finally, the Court believes that finding republication by hyperlink would undermine the purposes of applying the single publication rule to the internet. As discussed, the single publication rule is designed to prevent stale claims and to ensure the legislature's intent in passing statutes of limitations is met. By enacting a statute of limitations, the legislature clearly demonstrates a desire to require lawsuits be brought within a specified time of initial publication. Websites are frequently, if not constantly, updated. Methods of access to portions of the website can change on a regular basis and links to previous posts on a website are constantly added and taken away from sites. Therefore, to find that a new link to an unchanged article posted long ago on a website republishes that article would result in a continual retriggering of the limitations period.

**V.**

Plaintiff also argues that because Defendant mailed an extra copy of the 2006 print

10

version of the article to a researcher in 2008, Defendant republished the article within the statutory time period. The Restatement (Second) of Torts § 577A cmt. d provides,

> The printing and distribution of extra copies of the first edition of a book may properly be treated as mere continued circulation of the first edition and hence as still part of the single publication, if it is done not long after the original publication as soon as the supply is exhausted. If it occurs ten years later, it is indistinguishable from a second edition and there is a new cause of action.

Although the circumstances of this case are slightly different from the Restatement's example, the example is still informative. Here, Defendant did not actually reprint the original publication. Rather, it simply mailed out an extra copy it retained from the original publication. This is much closer to the initial reprinting of a first edition of a book after the original circulation is exhausted than printing a large quantity some ten years later and sending it out to a whole new audience.

Moreover, the sending of an extra book already printed is similar to the sale of a book on the retail rack years after the edition was printed. Such a sale is certainly designed to reach a new reader, but it undisputably does not create republication. Restatement (Second) of Torts § 577A ill. 7. In this case, a "stock copy" of the article was sent out to one person who requested it. Such actions do not constitute republication.

This holding is consistent with the majority of jurisdictions considering the issue. *See, e.g., Windrod v. Time, Inc.*, 78 N.E.2d 708, 714 (Ill. App. 1948) ("[T]he vast majority of cases . . . hold that the release of miscellaneous copies incidental to the general publication . . . does not constitute a new publication or create a new cause of action."); *Wolfson v. Syracuse Newspapers*, 254 A.D. 211, 212 (N.Y. App. Div. 1938) (finding no republication where defendant newspaper publisher, upon request of a third party, made a previously published

defamatory article available to that third party); *Barres v. Holt, Rinehart & Winston, Inc.*, 330 A.2d 38, 45 (N.J. Super. 1974) ("The court further finds that the bulk sale in August 1973 to a remainder outlet was not the equivalent of a republication . . ."); *Backus v. Look, Inc.*, 39 F.Supp. 662, 663 (D.C.N.Y. 1941) ("The issue of the magazine complained of was never reprinted, published or released by the defendant but several miscellaneous copies were mailed out later . . . in response to requests for the purchase of single copies. This did not constitute a republication.").

The apparent "leading" case on the issue is *Gregoire v. G. P. Putnam's Sons*, 81 N.E.2d 45 (N.Y. 1948), where the New York Court of Appeals found that the sale by the publisher of a miscellaneous or extra copy of a previously printed edition of a book does not constitute republication. *Id.* at 48-49. The court explained this ruling stating,

> Otherwise, although a book containing libelous material may have been the product of but one edition or printing fifty years ago, if, by sale from stock or by display, the publisher continues to make unsold copies of the single publication available to the public today, such conduct would amount to a republication of any libel the book contains and thereby would become actionable. Under such a rule the Statute of Limitation would never expire so long as a copy of such book remained in stock and is made by the publisher the subject of a sale or inspection by the public. Such a rule would thwart the purpose of the Legislature . . . to bar 'completely and forever' all actions which, as to the time of their commencement, overpass the limitation there prescribed upon litigation.

*Id.* Our case is analogous to *Gregoire*. The copy of the publication mailed out in 2008 was a part of the original printing, just like the additional copies sent out by the publisher in *Gregoire*. The sound reasoning of the New York Court of Appeals to protect the purpose of the statute of limitations is just as applicable here.

Cases finding that additional copies do republish generally involve defendants that reprint the defamatory statements and send those new printings out well after the original

12

publication. Plaintiff argues that *Wheeler v. Dell Publ'g Co.*, 300 F.2d 372 (7th Cir. 1962), supports his republication argument. Plaintiff misreads *Wheeler*. While the Court did find republication in *Wheeler*, it was because the defendant reprinted a new paperback edition of its allegedly defamatory book. The court was express, however, in distinguishing the new paperback edition from the release of any miscellaneous copies.

> The significant factor in deciding against [the defendant's] contention is the repeating of the defamation. . . . The reprintings were not 'miscellaneous copies' of the original printing, but were the result of a 'conscious act.' . . . [Where t]he single book was part of the first printing [it] is well within the 'miscellaneous copies' rule. Single books and miscellaneous copies are part of the original publication. There is no new conscious act.

*Id.* at 375. Thus, *Wheeler* agrees that miscellaneous copies like the one sent to a researcher by Defendant do not republish the original article.

## VI.

The final issue before the Court is Plaintiff's motion to amend the complaint to state a false light invasion of privacy claim. Defendant argues that amendment would be futile because the one year statute of limitations applicable to defamation claims also applies to false light claims. In contrast, Plaintiff contends that false light claims are governed by Kentucky's general five year statute of limitations.

The Sixth Circuit has very recently addressed this exact issue under Kentucky law. In *Branham v. Micro Computer Analysts*, No. 08-5729, 2009 WL 3461572 (6th Cir. Oct. 28, 2009), the court noted that "Kentucky also observes the . . . rule that a specific statute of limitations covers all actions whose real purpose is to recover for the injury addressed by it in preference to the general statute of limitations." *Id.* at *2 (citations omitted). The plaintiff in *Branham* brought libel, slander and invasion of privacy claims related to the statements of the defendant.

The Court ruled that "the same conduct underlay the Branham's claims for libel, slander, and the invasion of privacy. The one-year statute of limitations governing the first two claims therefore applies to the latter." *Id.* at *3. Because the Sixth Circuit has predicted that Kentucky courts would follow the one-year statute of limitations for invasion of privacy claims, this Court must follow that prediction. Therefore, any false light claim that Plaintiff may add by amending the complaint would be barred by the statute of limitations, meaning such amendment would be futile.

      The Court will issue an order consistent with this Memorandum Opinion.

cc:    Counsel of Record